Barry **CLIFFORD,** Plaintiff, Appellant,

v.

**M/V ISLANDER and Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, Defendants, Appellees.**

No. 89–1196.

United States Court of Appeals, First Circuit.

Submitted June 9, 1989.

Decided Aug. 8, 1989.

Allan H. Tufankjian, Scituate, Mass., on brief, for plaintiff, appellant.

Frank H. Handy, Jr. and Kneeland, Kydd & Handy, Boston, Mass., on brief, for defendants, appellees.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

We revisit for a third and hopefully last time the subaqueous exploits of plaintiff-appellant Barry Clifford, a highly-skilled diver who, under difficult and dangerous conditions, effected emergency repairs to the ferry M/V ISLANDER after she was holed in March 1980. Following these heroics, Clifford sought compensation from the ISLANDER's owner, defendant-appellee Steamship Authority. Litigation proved necessary.

## I

The district court found that the Steamship Authority was liable to plaintiff under an oral maritime contract and awarded him $150,000 based on a quantum meruit calculation. *Clifford v. M/V Islander,* 565 F.Supp. 922 (D.Mass.1983) (*Clifford I*). We affirmed the liability determination but ruled that the trial judge had insufficiently explained the basis for the damage computation. *Clifford v. M/V Islander,* 751 F.2d 1 (1st Cir.1984) (*Clifford II*). We therefore remanded "for further findings con-cerning what damages should be awarded under the contract." *Id.* at 8. Without taking additional evidence, the district court fleshed out its findings and again entered judgment for $150,000. *Clifford v. M/V Islander,* No. 80–2160–N (D.Mass. Oct. 2, 1987) (unpublished) (*Clifford III*). At the same time, the court denied plaintiff's request for prejudgment interest. *Id.* We affirmed. *Clifford v. M/V Islander,* 846 F.2d 111 (1st Cir.1988) (per curiam) (*Clifford IV*).

Plaintiff then applied for, and received, an execution from the district court clerk. On its face, the execution indicated that the date of entry of the original (*Clifford I*) judgment, July 14, 1983, marked the starting point for computation of postjudgment interest. Defendants moved for clarification. The district court amended the execution, ruling that the entry date of the later (*Clifford III*) judgment, October 2, 1987, controlled. Although its rationale was somewhat inexplicit, the court apparently concluded that denial of prejudgment interest, *see Clifford IV,* 846 F.2d at 113–14; *Clifford III, supra,* foreclosed an award of interest, however labelled, for any interval before October 2, 1987.

Plaintiff appeals, arguing that postjudgment interest should be computed from the time of the initial (*Clifford I*) damage award. We think plaintiff has correctly assayed the fluxes and refluxes of the interest equation.

## II

This suit was brought under the federal courts' maritime jurisdiction, 28 U.S.C. § 1333; accordingly, the matter of postjudgment interest is governed generally by federal law and specifically by 28 U.S.C. § 1961. *See Gele v. Wilson,* 616 F.2d 146, 148 (5th Cir.1980); *Moore–McCormack Lines v. Amirault,* 202 F.2d 893, 895 (1st Cir.1953). Insofar as pertinent here, section 1961(a) provides that postjudgment "interest shall be calculated from the date of the entry of the judgment." This deceptively straightforward language has led federal judges to a plethora of conflicting conclusions. In cases where a judgment for money damages was entered, then later

vacated, then eventually supplanted by a second dollar judgment (in whatever amount), the circuits are in great disarray as to when the postjudgment interest meter clicks into the "ON" position. *Compare, e.g., Bailey v. Chattem, Inc.,* 838 F.2d 149, 153–55 (6th Cir.) (equitable considerations normally require that postjudgment interest accrue on the amount common to both judgments from entry date of the first judgment), *cert. denied,* — U.S. —, 108 S.Ct. 2831, 100 L.Ed.2d 931 (1988); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.,* 676 F.2d 1291, 1310–12 (9th Cir.) (provisions of 28 U.S.C. § 1961 are mandatory and dictate that postjudgment interest must run from entry date of initial judgment), *cert. denied,* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982); *Ashland Oil, Inc. v. Phillips Petroleum Co.,* 607 F.2d 335, 336 (10th Cir.1979) (per curiam) (section 1961 requires that, for purposes of postjudgment interest, entry date of second judgment controls; vacated judgment should be treated as nullity), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980).[1]

Notwithstanding the division on the issue throughout the circuits, the district court was bound to follow the prior decisions of this court—and this panel is equally bound. *See Jusino v. Zayas,* 875 F.2d 986, 993 (1st Cir.1989); *Lacy v. Gardino,* 791 F.2d 980, 985 (1st Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986). We think that the key precedent is another long dachshund of a case, *United States v. Michael Schiavone & Sons, Inc.,* 304 F.Supp. 773 (D.Mass.1969), *aff'd in part and vacated in part,* 430 F.2d 231 (1st Cir.1970), *opinion after remand,* 325 F.Supp. 48 (D.Mass.), *modified,* 450 F.2d

875 (1st Cir.1971). Because we view *Schiavone* as controlling, we examine it in some detail.

In *Schiavone,* the government charged a shipper with having euchred an illegal rebate from a railroad, and sought treble damages as a civil penalty. Following a trial, the district court entered judgment in plaintiff's favor for treble damages (totaling $663,339). 304 F.Supp. at 781. We upheld the liability finding, but vacated the judgment and "remanded to the district court for reassessment of the illegal rebate." 430 F.2d at 236. The district court then refigured the kickback, gauged it to be under $28,000, multiplied by three, and entered a revised judgment. 325 F.Supp. at 50. On appeal, we modified the award, authorizing treble damages of $113,578.86. 450 F.2d at 876–77. We also determined that postjudgment interest should accrue from the date of the original judgment:

> Regardless of whether the judgment itself contains a specific award of interest, once final judgment has been entered in a civil suit in a federal court the prevailing party becomes a judgment creditor and is entitled to postjudgment interest under the mandatory terms of 28 U.S.C. § 1961.... [I]t is settled law that subsequent action by this court in reducing a judgment does not prevent interest from attaching upon the reduced amount from the date of the original judgment....

*Id.* (citations omitted). *See also Marshall v. Perez–Arzuaga,* 866 F.2d 521, 523–24 (1st Cir.1989) (holding that "entry of the judgment" as used in section 1961(a) means the initial entry of judgment on the jury verdict, not the entry of the court's later denial of a motion for judgment n.o.v.).

*Schiavone* remains the law of this circuit [2] and governs the question on appeal.

---

**1.** The myriad variations upon these themes were recently catalogued, circuit by circuit, by Justice White. *See Chattem, Inc. v. Bailey,* — U.S. —, 108 S.Ct. 2831, 2832, 100 L.Ed.2d 931 (1988) (White, J., dissenting from denial of certiorari). We need not repastinate this ground, for the Court has lately agreed to review a case which squarely presents the question and which will presumably afford much-needed guidance to the splintered courts of appeals. *See Bonjorno v. Kaiser Aluminum & Chemical Corp.,* 865 F.2d 566 (3d Cir.), *cert. granted,* — U.S. —, 109 S.Ct. 3184, 105 L.Ed.2d 693 (1989).

**2.** Our decision in *Explosives Corp. v. Garlam Enterprises Corp.,* 817 F.2d 894 (1st Cir.), *cert. denied,* 484 U.S. 925, 108 S.Ct. 286, 98 L.Ed.2d 247 (1987), did not undermine *Schiavone.* In *Garlam,* we concluded that it would be inappropriate to allow postjudgment interest to run before a final, appealable judgment had been entered in the district court. *Id.* at 903–04. After all, "[i]f the judgment was not final for liability purposes, it could not be final on damages." *Id.* at 904. That, of course, is far different from cases like *Schiavone* and the case at bar (where the initial judgment, albeit vacated

Once a final judgment has been entered as to liability and damages, vacation of the damage award on appeal and issuance of an order requiring further proceedings to quantify recoverable damages will not prevent accrual of postjudgment interest at the federal statutory rate on the amount common to the earlier and later judgments from the date the original judgment was entered. *Accord Bailey*, 838 F.2d at 153–55; *Twin City Sportservice*, 676 F.2d at 1311.[3]

### III

We note, too, that this result is not only demanded by precedent and statute, but is consistent with the equities of the situation. Plaintiff's services were rendered in 1980. By 1983, it was firmly established that defendants owed Clifford the fair value of those services.[4] All that remained in dispute then and thereafter was the pointed question: how much? The amount was originally set at $150,000 by the district court, and—two appeals and an intervening remand later—was again set at the same figure.

"[I]n the world of commerce, time equates with money." *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 764 (1st Cir. 1985). If equity were thought to control, the most relevant inquiry would seem to be which party should, in fairness, bear the financial onus arising from plaintiff's loss of use of the funds owed to him. It seems much more evenhanded to assign this cost to the Steamship Authority rather than to plaintiff, at least from and after the time defendants' liability for payment was conclusively established. *See Marshall*, 866

F.2d at 524; *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 624 (5th Cir.1988); *see also* Comment, *Interest on Judgments in the Federal Courts*, 64 Yale L.J. 1019, 1048 (1955).

### IV

We need go no further. Under *Schiavone*, plaintiff was entitled to postjudgment interest from the date of the initial (*Clifford I*) judgment. For that reason, we summarily reverse the district court's order anent postjudgment interest and remand for entry of a revised judgment bearing such interest from June 14, 1983 forward. 1st Cir.Loc.R. 27.1.

*Reversed and remanded.*

---

on appeal, was final when entered). *See also Marshall*, 866 F.2d at 522–23 (distinguishing *Garlam* ).

**3.** A different situation may obtain where, rather than vacating the first judgment and requiring further proceedings below to ascertain the damage amount, the court of appeals modifies an award (or reverses a judgment which failed to grant certain damages) and directs the entry of a particular monetary judgment. Under such circumstances, Fed.R.App.P. 37 applies and the appellate court's mandate "shall contain instructions with respect to allowance of interest." *Id.* In formulating such instructions, general eq-

uitable considerations are often taken into account. *See, e.g., Affiliated Capital Corp. v. City of Houston*, 793 F.2d 706 (5th Cir.1986) (en banc). Here, we vacated the initial judgment and remanded for further proceedings without directing entry of a specific dollar judgment. *See Clifford II*, 751 F.2d at 8–9. Rule 37, is, therefore, not implicated.

**4.** Indeed, the Steamship Authority conceded in the district court that it had an obligation to pay plaintiff "the reasonable value" of the services which it so gladly accepted. *Clifford I*, 565 F.Supp. at 928.